```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x
                                    :
UNITED STATES OF AMERICA            :
                                    :     MEMORANDUM DECISION
        - against -                 :
                                    :     06 Civ. 2243 (DC)
JIN CHEN,                           :     03 Cr.  567 (DC)
                                    :
                    Defendant.      :
                                    :
- - - - - - - - - - - - - - - - - -x
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/6/06
```

**APPEARANCES:**   JIN CHEN
                   Pro Se Defendant
                   Federal Correctional Institution
                   P.O. Box 300
                   Ray Brook, NY  12977

                   MICHAEL GARCIA, ESQ.
                   United States Attorney for the
                        Southern District of New York
                        By:  Leslie Brown, Esq.
                             Assistant United States Attorney
                   One Saint Andrew's Plaza
                   New York, New York  10007

**CHIN, D.J.**

Pro se defendant Jin Chen moves pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence on a variety of grounds. For the reasons set forth below, the motion is denied.[1]

---

[1] Because I find that "it plainly appears from the [section 2255] motion . . . and the record of prior proceedings that [Chen] is not entitled to relief," I do not order the United States Attorney to file an answer to the instant motion. See Rules Governing Section 2255 Proceedings for the U.S. Dist. Courts 4(b); Armienti v. United States, 234 F.3d 820, 822-23 (2d Cir. 2000).

**BACKGROUND**

**A.   The Facts**

Chen appeared before me on February 25, 2004, and pled guilty to the following:

In December 2000 and January 2001, Chen, along with several others, planned and executed two separate robberies, one in New Jersey and one in Arizona.  (Plea Tr. at 14-18).[2]  First, in December 2000, Chen and others robbed a home in New Jersey, where they knew there would be money from a "snake head" -- i.e., someone involved in the business of smuggling aliens from China into the United States.  (Id. at 14-15).  Chen admitted to using a firearm during this robbery, and admitted that he and his co-conspirators had agreed to use force or the threat of force.  (Id. at 15-16).

Second, on or around January 15, 2001, Chen and others robbed a home in Phoenix, Arizona, where they knew there would be money from a local restaurant business.  (Id. at 17).  Chen admitted that he and his co-conspirators had agreed to use force or the threat of force during this robbery as well.  (Id.).

**B.   Prior Proceedings**

Chen was indicted on May 7, 2003.  On February 25, 2004, Chen entered into a plea agreement (the "Agreement") with

---

[2]   References to "Plea Tr." are to the transcript of the guilty plea allocution on February 25, 2004.  References to "Sent. Tr." are to the transcript of the sentencing on March 28, 2005.

the Government.  (Agreement at 1).  The Agreement provided that Chen would plead guilty to two counts of conspiracy to commit robbery in violation of 18 U.S.C. § 1951, and one count of brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c).  (Id.).  Chen and the Government stipulated to an offense level of 25, a criminal history category of II, and a sentencing range of 147 to 162 months imprisonment.  (Id. at 4-5).  The Agreement provided that:

> It is . . . agreed [] that the defendant will not file a direct appeal from, nor litigate under Title 28, United States Code, Section 2255 and/or Section 2241, any sentence within or below the Stipulated Sentencing Guidelines Range set forth above (147 to 162 months).

(Id. at 6-7).

On February 25, 2004, Chen appeared before this Court represented by retained counsel, and with the assistance of an interpreter, he proceeded to plead guilty pursuant to the terms of the Agreement.  I discussed with defendant whether he fully understood the Agreement, and whether he was voluntarily entering into it.  The discussion included, for example, the following:

> THE COURT:  Have you had a full opportunity to discuss your case with Mr. Labush and to discuss the consequences of entering a plea of guilty?
>
> THE DEFENDANT: Yes.
>
> . . .
>
> THE COURT: Are you satisfied with Mr. Labush and his representation of you?
>
> THE DEFENDANT:  Yes, I am satisfied.
>
> . . .

>THE COURT: I'm going to review with you now
>the maximum possible penalties.  Counts one
>and 18 are the robbery conspiracy counts,
>they each carry a maximum sentence of 20
>years imprisonment . . . Do you understand
>that?
>
>THE DEFENDANT: Yes, I do.
>
>THE COURT: Count two is the gun count, it
>carries a maximum sentence of life
>imprisonment, a mandatory minimum term of
>seven years imprisonment, which must run
>consecutively to any sentence imposed on
>count one . . . Do you understand that?
>
>THE DEFENDANT: Yes.
>
>THE COURT: Now do you understand that if you
>are convicted on all three counts, as a
>theoretical matter you could receive as much
>as 40 years imprisonment on counts one and
>18, you could receive as much as life on
>count two, and at a minimum I would have to
>sentence you to seven years imprisonment on
>count two to run following any sentence that
>I impose on count one.  Do you understand
>that?
>
>THE DEFENDANT: Yes.

(Plea Tr. at 4, 8-9).

Following the guilty plea, the probation department prepared a presentence report (the "PSR") containing a calculation of the appropriate sentence under the sentencing guidelines.  The probation department determined that the offense level stipulated to by the parties in the Agreement did not accurately reflect the facts of the case.  (PSR at 21; Sent. Tr. at 3).  The PSR recommended an additional 1-level increase with respect to count 18 because "two handguns were taken during the course of the offense."  (PSR at 20).

-4-

The probation department calculated the final offense level by taking the count with the highest offense level -- here, count 18 had an offense level of 28 -- and increasing that level pursuant to § 3D1.4.  (Id.).  The other counts added up to a total of 1 1/2 units, which added one offense level, resulting in an adjusted level of 29.  (Id.).  The PSR adjusted the final offense level 3 levels downward for acceptance of responsibility.  (Id.).  Accordingly, the final offense level was 26, one level above the stipulated offense level of 25.  (Id. at 21; Agreement at 5).

The probation department therefore recommended that the Court apply a guideline range of 154-171 months, rather than 147-162 months, and impose a sentence of 154 months imprisonment.  (PSR at 31).  The 154 months was to be comprised of 70 months for counts 1 and 18, concurrently, followed by 84 months for count 2, to be served consecutively.  (Id.).

On March 4, 2005, the parties appeared before me to discuss a potential conflict of interest that defendant's attorney might face.  The courtroom was closed to the public, and the hearing was sealed in the interests of justice.  During that hearing, I explained to defendant that his attorney was facing a potential conflict of interest, and that he was entitled to be represented by counsel free of any potential conflict of interest.  I further explained that if he wanted new counsel but could not afford new counsel, I would appoint new counsel for defendant -- free of cost.  Defendant responded that he fully

understood the potential conflict of interest his attorney was facing, and that he wished to continue with him as his attorney. I allowed defendant's attorney to remain on the case.  One consideration was that Chen had retained his lawyer and the lawyer had represented Chen in a prior case.  I had also appointed independent counsel to advise Chen regarding the potential conflict, and Chen had an opportunity to speak with him.[3]

On March 28, 2005, I sentenced Chen.  Defense counsel objected to the one point adjustment for the recovery of weapons recommended in the PSR.  (Sent. Tr. at 3).  The Government took the position that it would "stand by the plea agreement that [it] had] with the defendant" and declined to argue for the increased sentencing range of 154-171 months.  (Id.).  I sustained the defendant's objection and concluded that the guideline range was 147-162 months.  (Id. at 3, 5).  I subsequently sentenced Chen to 147 months imprisonment, the bottom of the range.  (Id. at 9).

Chen did not appeal.  On March 15, 2006, Chen filed the present motion.[4]

---

[3] The proceedings were transcribed and the transcript has been filed under seal.

[4] The motion is timely.  "A motion by a federal prisoner for postconviction relief under 28 U.S.C. § 2255 is subject to a one-year time limitation that generally runs from the date on which the judgment of conviction becomes final." Clay v. United States, 537 U.S. 522, 524 (2003) (quoting 28 U.S.C. § 2255) (internal quotations omitted).  When there is no appeal, conviction becomes final ten days after entry of judgment in the district court.  See Moshier v. United States, 402 F.3d 116, 118 (2d Cir. 2005) ("[F]or purposes of § 2255 motions, an unappealed federal criminal judgment becomes final when the time for filing

**DISCUSSION**

Chen moves to vacate, set aside, or correct his sentence, arguing, inter alia, that: (1) he was denied the right to appeal his sentence; (2) he was unlawfully sentenced for participating in two conspiracies when they were really one; (3) his sentence was unlawfully enhanced under the United States Sentencing Guidelines; (4) he was unlawfully sentenced for participating in a crime of violence; (5) he was unlawfully charged and convicted of a federal crime; (6) he was denied effective assistance of counsel; and (7) he was denied the right to choice of counsel.

The motion is denied.  First, the motion is procedurally barred because Chen waived his right to appeal or otherwise challenge his sentence.  Second, even if the petition were not procedurally barred, the petition nevertheless fails because Chen's arguments are without merit.  I discuss them in turn.

**A.   Waiver of Right to File a § 2255 Motion**

**1.   Applicable Law**

The Second Circuit has held that "[i]n no circumstance . . . may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence

---

a direct appeal expires."); Fed. R. App. P. 4.  Here, this motion was filed March 15, 2006, within one year after the conviction became final.

conforming to the agreement."  United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir. 1993).

A waiver of appeal does not, however, "foreclose an attack on the validity of the process by which the waiver has been produced," such as a plea agreement.  Frederick v. Warden, Lewisburg Corr. Facility, 308 F.3d 192, 195 (2d Cir. 2002) (citation omitted).  Accordingly, the district court "does not automatically enforce § 2255 waivers in the face of ineffectiveness of counsel, as such claims may call into question the very legitimacy of the § 2255 waivers."  Mendez v. United States, No. 01 Civ. 2924 (RMB), 2002 WL 226693, at *2 (S.D.N.Y. Feb. 13, 2002) (quotation omitted).

To show that a plea agreement is invalid due to ineffectiveness of counsel, a defendant must first establish that "counsel's representation fell below an objective standard of reasonableness."  Strickland v. Washington, 466 U.S. 668, 688 (1984).  Second, a defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  United States v. Hernandez, 242 F.3d 110, 112 (2d Cir. 2001) (internal citations omitted).

On the other hand, a guilty plea is valid if it "represent[s] a voluntary and intelligent choice among the alternative courses of action open to the defendant."  Ventura v. Meachum, 957 F.2d 1048, 1058 (2d Cir. 1992).

   2.   **Application**

        Here, Chen's § 2255 motion to vacate or correct his sentence is procedurally barred because he waived his right to such a challenge.  In the Agreement, Chen agreed that he would "not file a direct appeal from, nor litigate under Title 28, United States Code, Section 2255 . . . any sentence within or below the Stipulated Sentencing Guidelines Range set forth above (147 to 162 months)."  (Plea Agreement at 6-7).

        The sentence he received was within -- indeed was at the bottom of -- the stipulated range, as I sentenced him to 147 months imprisonment.  Thus, based on the plain terms of the Agreement, Chen's § 2255 motion is barred.

        Moreover, Chen does not attack the validity of the plea process, see Frederick, 308 F.3d at 195 (waiver of appeal valid unless attacking validity of process, i.e., plea agreement), nor does he suggest that his waiver of appeal was involuntary, see Ventura, 957 F.2d at 1058 (plea valid where it represents a voluntary, intelligent choice by defendant).  In his plea allocution, Chen stated under oath that he understood that he was waiving his right to challenge "any sentence within or below the stipulated range of 147 to 162 months," and that he would have "no right to appeal or otherwise try to challenge" any sentence within or below that range.  (Plea Tr. at 12).

        He further represented that (1) he was satisfied with his counsel and his counsel's representation of him (id. at 4); (2) he had a full opportunity to discuss the consequences of

entering a plea of guilty with his counsel (id.); (3) he understood the charges in the indictment and the minimum and maximum sentences he could receive (id. at 8-11); (4) he fully understood the letter plea agreement before he signed it (id. at 12); and (5) the letter plea agreement constituted his complete and total understanding of the entire agreement among the Government, his attorney, and himself (id. at 13).

Although Chen does assert an ineffective assistance claim, for the reasons discussed below, the ineffective assistance claim is meritless.  Chen has not shown that counsel made any errors or that, even assuming he did, there is a reasonable probability that he would not have pled guilty had the errors not been made.

Consequently, I find that the Agreement is valid. Because I sentenced Chen to a term within the stipulated range, he has waived his right to challenge his sentence.

**B.    The Merits**

Even if Chen had not waived the right to challenge his sentence, the motion would be denied on the merits.

   **1.    Denial of Right to Appeal**

Chen argues that he was denied the right to appeal his sentence, a recognized statutory right "arguably protected by the due process clause."  (Chen Affidavit (hereinafter "Aff.") at 4). To support his argument, Chen cites Roe v. Flores-Ortega, 528 U.S. 470 (2000), for the proposition that where trial counsel refuses to perfect an appeal as requested by the convicted

-10-

defendant, the defendant is entitled to relief.  (Chen Aff. at 6).  Chen's actual argument, then, is that trial counsel acted ineffectively by failing to file a notice of appeal.  Chen alleges that he asked counsel to file an appeal and that counsel did not do so.  Nonetheless, this argument fails because Chen does not make a sufficient showing under the standard set out in Flores-Ortega.

In Flores-Ortega, the Supreme Court held that a defendant claiming ineffective counsel must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant.  528 U.S. at 476-77.

Where the situation involves failure to file a notice of appeal, a slightly modified test is applied within the framework set out above.  First, with respect to reasonableness, counsel has a "duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing."  Flores-Ortega, 528 U.S. at 480; Sarroca v. United States, 250 F.3d 785, 787 (2d Cir. 2001).  Second, with respect to prejudice, a defendant must demonstrate that "but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed."  Sarroca, 250 F.3d at 787 (emphasis in original).  Moreover, in determining

whether a reasonable defendant would have appealed, the Court observed that:

> Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a . . . particular defendant sufficiently demonstrated to counsel an interest in an appeal.

Flores-Ortega, 528 U.S. at 480.

In setting forth the following test, the Flores-Ortega Court specifically rejected "a bright-line rule that counsel must always consult with the defendant regarding an appeal." Id. The touchstone of this inquiry, then, is whether counsel's actions were reasonable. Id. at 481 ("The relevant question is not whether counsel's choices were strategic, but whether they were reasonable.").

Here, even assuming Chen asked his attorney to file an appeal, I conclude that his counsel nevertheless acted reasonably by not doing so because Chen's attorney had already consulted with Chen about whether such an appeal should be filed prior to Chen's guilty plea. Specifically, both Chen and his attorney stated on the record that they had fully discussed the plea agreement, and Chen acknowledged that, as part of the plea

agreement, he was waiving his right to appeal.  (See Plea Tr. at 6, 13-14).  Thus, the harm that Flores-Ortega sought to avoid -- i.e., where counsel does not consult with defendant about appealing -- is not at issue here, where his attorney had already consulted with him about his right to appeal in the context of his guilty plea.  The fact that Chen later changed his mind does not negate the fact that he and his attorney had previously discussed the merits of an appeal, and had decided that it was best to plead guilty and to waive his right to appeal.

In addition, as the Flores-Ortega Court observed, other highly relevant considerations in determining whether counsel acted reasonably in deciding not to appeal include "whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights."  528 U.S. at 480.  Here, Chen clearly received the sentence bargained for in his plea agreement, as he was sentenced to the bottom of the stipulated guidelines range.  He also explicitly waived his right to file a § 2255 petition challenging his sentence.  Moreover, there simply were no meritorious issues that could have been raised on appeal in good faith.  Thus, under these circumstances -- where the defendant pled guilty (thus indicating his desire to end the judicial proceedings), waived his right to appeal, and was sentenced to a term at the lowest end of the stipulated range -- I conclude that Chen cannot show that counsel's failure to file a notice of appeal was objectively unreasonable.  See Olivares v. United

States, 05 Civ. 6094 (SHS), 2006 WL 2057188, at *4 (S.D.N.Y. July 24, 2006) (holding that counsel was not ineffective for failing to file a notice of appeal where defendant waived his right to appeal and was sentenced to the statutory minimum in accordance with his plea agreement).

### 2.   Sentence For Two Charges of Conspiracy

Chen argues that his sentence is unlawful because the base offense level incorrectly reflects involvement in two separate conspiracies. (Petition (hereinafter "Pet.") at 6). According to Chen, because "[a]ll overt acts were in connection with the same common scheme and plan," the acts were "in furtherance of the same conspiracy." (Id.). Thus, "[t]his incorrect computation increased the base offense level" under which he was sentenced. (Id.).

The argument fails. First, Chen pled guilty to two separate counts of conspiracy under 18 U.S.C. § 1951. In the plea agreement, he stipulated that there were two separate conspiracies. He cannot now argue that there was only one.

Second, the facts show that Chen was involved in two separate conspiracies. For example, one robbery took place in New Jersey while the other took place in Arizona, and the New Jersey robbery sought money from the proceeds of a "snakehead," while the Arizona robbery sought money from a restaurant business. See, e.g., United States v. Macchia, 35 F.3d 662, 667 (2d Cir. 1994) (two conspiracies distinct where there were differences in operations and were relatively independent of each

other).  Although the two robberies were related, they were separate crimes.

Thus, there was nothing unlawful about sentencing Chen based on two separate conspiracies.

### 3. Sentence Unlawfully Enhanced

Chen argues that his sentence was unlawfully enhanced under the sentencing guidelines because the "conduct of brandishing a firearm during and [in] relation to a crime of violence" was wrongfully used to increase "the base offense level and sentencing range."  (Pet. at 8).  According to Chen, the Court improperly made this finding of fact, and then used this, as well as other findings, to unlawfully enhance defendant's sentence in violation of Apprendi v. New Jersey, 530 U.S. 466 (2000).  (Chen Aff. at 5, 9-10).

Defendant's argument is easily rejected as the Court did not make any findings of fact.  Rather, it was defendant who admitted to brandishing a firearm during his plea allocution. (Plea Tr. at 15-16) ("THE COURT: Did you carry or use a firearm in connection with this robbery?  THE DEFENDANT: Yes.").  Thus, the Court properly took the weapons charge into account when sentencing Chen, as Chen pled guilty to this charge pursuant to his plea agreement.

### 4. Sentence for Participating in a Crime of Violence

Chen argues that he was unlawfully sentenced for participating in a crime of violence because he did not commit any violent acts.  (Pet. at 9).  Chen argues that "no such

-15-

accusations were stated in the counts in the indictment to which [he pled] guilty, and such a fact . . . was [not] admitted." (Id.).

This contention is without merit.  Chen pled guilty to two counts of conspiracy to commit robbery in violation of 18 U.S.C. § 1951.  (Agreement at 1).  The statute covers robbery and the use or threat of physical violence to interfere with commerce.

In the plea allocution, Chen admitted that he and others agreed to take money by force or threat of force for both the New Jersey and Arizona robberies.  (Plea Tr. at 16-17). Therefore, he cannot now deny participating in a crime of violence.

### 5. Charged and Convicted of a Federal Crime

Chen next seems to challenge whether his conduct is subject to federal jurisdiction.  (Pet. at 9(a)).

This contention is also without merit.  Again, Chen pled guilty to 18 U.S.C. § 1951, a federal crime.  Under this statute, one of the elements that the Government must prove at trial is federal jurisdiction by involvement in interstate commerce.  In the plea allocution, Chen was notified of the Government's burden.  The Government stated: "with respect to counts one and 18 . . . the government would have to prove at trial beyond reasonable doubt . . . that interstate or foreign commerce or an item moving in interstate or foreign commerce would or have been delayed or obstructed in any way or degree."

-16-

(Plea Tr. at 7). Chen waived his right to trial, and through his attorney, declined to contest the elements of interstate commerce. (Id. at 6, 18). Therefore, Chen cannot now argue that federal jurisdiction over this matter was not proper.

### 6. Denial of Effective Assistance of Counsel

Chen claims that he has been denied effective assistance of counsel throughout the judicial proceedings. (Pet. at 9(a)).

To prevail on his claim of ineffective assistance of counsel, Chen must show that (1) his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) he was prejudiced by counsel's deficient performance. See Strickland, 466 U.S. at 686-88. When applying the Strickland test, "judicial scrutiny of counsel's performance must be highly deferential." Id. At 689. "The court's central concern is not with 'grad[ing] counsel's performance,' . . . but with discerning 'whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.'" United States v. Aguirre, 912 F.2d 555, 561 (2d Cir. 1990) (quoting Strickland, 466 U.S. at 696).

Chen has not met the standard set out under Strickland. First, defendant has not offered facts and examples that would enable the Court to determine that he received ineffective assistance of counsel. In the plea allocution, Chen asserted

-17-

that he was satisfied with his attorney's representation of him (Plea Tr. at 4), and that he and his attorney had fully discussed the consequences of entering a guilty plea, as well as the terms of the plea agreement.  (Id. at 4-13).

Second, even assuming that Chen could provide examples of ineffective assistance, he still could not prevail on this claim because he does not explain how he was prejudiced by counsel's allegedly deficient performance -- especially here, where defendant was sentenced near the very bottom of the sentencing guidelines for the crimes which he pled guilty.

In sum, Chen's ineffective assistance claim falls well short of the standard required under Strickland, as Chen fails to satisfy either prong of the Strickland test.

### 7.   Denial of Right to Choice of Counsel

Finally, Chen claims that during the judicial proceedings, he sought to change attorneys, but was denied this right, and was "forced to proceed with current counsel."  (Pet. at 9(a)).

This claim fails, as it is contradicted by the transcript of the sealed hearing I had with the parties on March 4, 2005.  Specifically, in that hearing, I asked Chen if he wanted me to appoint him a new lawyer -- free of cost -- because of the potential conflict of interest that his attorney was facing.  Chen declined, and expressed his desire to retain his attorney.  It is therefore inaccurate for Chen to argue that he was forced to proceed with his current counsel, since he was

given adequate time, including an opportunity to consult with indigent counsel as well as a recess during the hearing, to consider the Court's offer to provide new counsel.

## CONCLUSION

Accordingly, the motion for relief pursuant to 28 U.S.C. § 2255 is denied in all respects. Because Chen has not made a substantial showing of the denial of a constitutional right, I decline to issue a certificate of appealability. See 28 U.S.C § 2253(c). I certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal taken from this decision would not be taken in good faith.

The Clerk of the Court shall close the case.

SO ORDERED

Dated: New York, New York
October 6, 2006

DENNY CHIN
United States District Judge